[Cite as *Sypherd v. Sypherd*, 2012-Ohio-2615.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| KELI M. SYPHERD | | C.A. No.    25815 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARK B. SYPHERD | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.    2007-10-3306 |

DECISION AND JOURNAL ENTRY

Dated: June 13, 2012

---

BELFANCE, Presiding Judge.

{¶1}   Appellant, Mark Sypherd ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Domestic Relations Division.  Although Father also challenges the trial court's finding of contempt for violating the vacation provision of the original divorce decree, that issue is now moot because Father has since purged himself of the contempt.  For the reasons that follow, we affirm.

I.

{¶2}   Father was married to Keli Sypherd ("Mother") from May 22, 1999, until they were granted a divorce on December 5, 2008.  The trial court incorporated the parties' separation agreement and a shared parenting plan into the divorce decree. The shared parenting plan allocated parenting time between the parents for their twins born in 2001 and a younger daughter born in 2005.  The plan provided that the children would reside with Father from Monday evening until Wednesday evening, with Mother for the remainder of the weekdays, and would

alternate weekends between the parents. The parenting plan also included a standard parenting time schedule for holidays and vacations. Mother was designated the residential parent while the children resided with her and Father was the residential parent while the children resided with him.

{¶3} In September 2009, Mother filed a motion to terminate the shared parenting plan and to reallocate parental rights and responsibilities. As Mother later elaborated at the hearing, her motion was based on allegations that there had been a significant breakdown in the parties' communication and cooperation about the children during the prior school year. Mother asserted that the midweek transitions between the parents' homes during the prior school year had become too disruptive for their young children and, as a result, the children were suffering emotionally and academically. In addition, Mother described increasing conflict and volatility when interacting with Father some of which occurred in front of the children. Consequently, Mother argued it was in the children's best interests to modify Father's midweek parenting time.

{¶4} Following an evidentiary hearing, the magistrate concluded that the children were adversely impacted in part due to the midweek transitions between their parents' homes. The magistrate specifically emphasized the communication problems between the parents, Father's sometimes "dictatorial" attitude, and Father's practice of confiscating the children's clothing when he decided it was unsuitable rather than communicating with Mother to resolve the problem. The magistrate declined to terminate shared parenting but found that the shared parenting plan should be modified so as to eliminate the school-week overnight companionship with Father. Accordingly, the magistrate recommended that the children would reside with Mother throughout the school week and Father would have parenting time two evenings a week and on alternating weekends.

{¶5} Although there were numerous contempt allegations by Mother and Father, the only contempt finding now at issue is Mother's claim that Father violated the vacation provision of the divorce decree by keeping the children for the week beginning August 23, 2010. The magistrate found that Father had violated the terms of the decree because he did not give Mother the requisite 30 days' notice for a one-week vacation and because the school year began that week and the decree did not permit vacation time with the children during the school year.

{¶6} Father timely objected to the magistrate's decision. The trial court ultimately overruled his objections and ordered that the shared parenting plan be modified as the magistrate recommended. The trial court found that there had been a change in the children's circumstances and that a reduction in Father's midweek parenting time was necessitated by the children's best interests.

{¶7} The trial court also found Father in contempt for violating the vacation provision of the decree and ordered him to serve three days in jail. The trial court further ordered that Father could purge himself of the contempt by forfeiting two weekends of parenting time with the children and by paying a portion of Mother's attorney fees. Father appeals and raises four assignments of error.

ASSIGNMENT OF ERROR I

THE COURT ABUSED ITS DISCRETION BY FINDING A CHANGE IN THE CIRCUMSTANCES OF THE CHILDREN PURSUANT TO [R.C. 3109.04] BASED PRIMARILY, IF NOT SOLELY, ON THE INADMISSIBLE HEARSAY AS CONTAINED IN THE GUARDIAN AD LITEM'S REPORT AND/OR IN FINDING THAT A MODIFICATION OF THE PARENTING TIME SCHEDULE WAS IN THE CHILDREN'S BEST INTEREST AND/OR IN FINDING THAT THE HARM FROM CHANGING THE SCHEDULE WAS OUTWEIGHED BY THE ADVANTAGES OF THE CHANGE, AS EACH OF THESE INDIVIDUAL FINDINGS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE[,] WHICH DICTATED THAT THE CHILDREN WERE WELL ADJUSTED TO THEIR WEEKLY PARENTING TIME SCHEDULE AND THERE WAS NO CHANGE IN CIRCUMSTANCE

TO WARRANT A MODIFICATION OF THE PARENTING TIME SCHEDULE AND THAT ANY CHANGE WAS NOT IN THE CHILDREN'S BEST INTEREST.

{¶8} In his first assignment of error, Father raises several arguments. First, he argues that the trial court erred in basing its finding that there had been a change in the children's circumstances on hearsay evidence that was presented through the testimony and report of the guardian ad litem, who had no first-hand knowledge of the facts she relayed to the court. Alternatively, he asserts that the evidence did not support the trial court's findings that there had been a change in the children's circumstances, and/or that the reduction in Father's parenting time was necessary to serve the children's best interests. We will address each argument in turn.

**Change in Circumstances and Hearsay Evidence**

{¶9} Father first argues that the trial court erred in basing its finding that there had been a change in the children's circumstances on inadmissible hearsay evidence. The parties do not dispute that, before the trial court could modify Father's parenting time with his children, it was required to find that there had been a change in the circumstances of the children or either parent. *See* R.C. 3109.04(E)(1)(a); *Gunderman v. Gunderman*, 9th Dist. No. 08CA0067-M, 2009-Ohio-3787, ¶ 23 (holding that, when shared parenting continues but there is a significant modification in the allocation of parenting time between the parents, the modification must comply with the requirements of R.C. 3109.04(E)(1)(a)). A sufficient change in circumstances "must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). R.C. 3019.04(E)(1) also "implies more than changes which typically occur with the passage of time." *Averill v. Bradley*, 2d Dist. No. 18939, 2001 WL 1597881, *3 (Dec. 14, 2001).

{¶10} Over Father's objections, Mother presented evidence through the testimony and report of the guardian ad litem about what the twins, their teachers, and their school counselor had told the guardian about the twins' stress and difficulties they had experienced during the prior school year, that the twins and school personnel attributed to the midweek transitions between their parents' homes. Father argues that the trial court erred in admitting these out-of-court statements of the children and school personnel because the trial court did not interview the children in camera, nor did the teachers or other school personnel testify at the hearing. Instead, the statements were offered through the report and testimony of the guardian ad litem. Father asserts that the admission of this evidence was reversible error because he had no opportunity to seek elaboration or explanation of the out-of-court statements or to challenge their credibility.

{¶11} We agree with Father that a trial court may not rely on hearsay evidence as the factual basis upon which to find a change of circumstances. *See In re O.H.*, 9th Dist. No. 25761, 2011-Ohio-5632, ¶ 24-25 (holding that, although out of court statements in the guardian's report may be admitted to explain the course of her investigation and basis for her recommendation, they cannot be admitted to prove the truth of the matter asserted in those statements). Sup.R. 48 explicitly provides that the role of the guardian ad litem is to "assist a court in its determination of a child's best interest" by providing the court with relevant information and "an informed recommendation" about the children's best interest. Sup.R. 48(B) and (F). *See also* R.C. 3109.04(F)(2)(e) (the role of the guardian ad litem is to provide the court with a "recommendation" about the children's best interests); Loc.R. 34.03 of the Court of Common Pleas of Summit County, Domestic Relations Division (the guardian ad litem's role is to "assist" the court "in determining the best interest of the child(ren)" by making a "comprehensive

assessment of the parenting issues related to the allocation of parental rights and responsibilities.").

{¶12} We recognize that, given the role of the guardian ad litem, her report and testimony could at times include out-of-courts statements of people that she interviewed. The guardian ad litem is required by Sup.R. 48(D)(13) to interview the parties, the children, and school personnel and to include relevant information in her report[1], which may include some of the information that she learned from those people. *See also* R.C. 3109.04(F); Loc.R. 34.03 of the Court of Common Pleas of Summit County, Domestic Relations Division. The intended purpose of the guardian ad litem gathering that information, however, is not to offer evidence to the court of the facts that she gathered but to explain the basis for her recommendation. In other words, when a guardian ad litem relays what a person told her, it is not for the purpose of establishing the truth of the matters relayed. Rather, it is for the purpose of describing the investigatory process of the guardian ad litem and the matters which may have influenced her opinion as to the best interests of a child.

{¶13} Given the guardian's role and the requirements that she explain her investigation and the basis for her recommendation, her report and testimony may necessarily include information about what other people told her. Those out-of-court statements do not become inadmissible "hearsay," however, unless they are "offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). For example, an out-of-court statement offered simply to prove that the statement was made is not hearsay. *State v. Gillespie*, 2d Dist. No. 24456, 2012-

---

[1] For ease of discussion and because the guardian ad litem was a female in this case, we refer to the guardian ad litem in the feminine.

Ohio-1656, ¶ 54. Likewise, the statements do not constitute hearsay if they fall within a recognized exception to the hearsay rule. Evid.R. 801(D), 803, and 804(B); *McPherson v. Goodyear Tire and Rubber Co.*, 9th Dist. No. 21499, 2003-Ohio-7190, ¶ 12. *See also State v. McRae*, 8th Dist. No. 96253, 2011-Ohio-6157, ¶ 18; *State v. McGrapth*, 10th Dist. No. 11AP-117, 2011-Ohio-6130, ¶ 8-9 (Out-of-court statements offered by police officers and other investigators that simply explain the course of their investigation, such as why they decided to investigate a particular suspect, also fall outside the hearsay rule.). Similarly, a guardian ad litem is permitted to testify about out-of-court statements to explain the course of her investigation or explain why she reached her ultimate conclusion about the best interests of the children. *In re O.H.*, 2011-Ohio-5632, at ¶ 24. However, this Court is unaware of any legal authority that permits the guardian ad litem to offer evidence of "facts" about which she has no first-hand knowledge. In fact, Evid. R. 602 explicitly requires that a witness testify only to matters about which she has first-hand knowledge. Moreover, unlike R.C. 2151.414(D)(1)(b), which authorizes the guardian ad litem in a juvenile permanent custody hearing to give hearsay testimony about the children's wishes, R.C. 3109.04(F) does not similarly authorize the guardian ad litem in domestic cases to testify about the children's wishes. Instead, R.C. 3109.04(F)(1)(b) provides that the court will ascertain the children's wishes by questioning them directly in camera.

{¶14} We are mindful that the unique role of a guardian ad litem places the parties in a position where a trial court is exposed to potential hearsay. Thus, it is critical that the trial court distinguish between what may be viewed as an established fact as opposed to information which is merely a narrative explanation that provides a foundation for a guardian ad litem's opinion. In this case, although the guardian ad litem was permitted to testify about information that she

received from other people that merely explained her investigation and the basis of her best interest recommendation, her testimony about those statements was not admissible to prove "the truth of the matter asserted." *Id.*; Evid.R. 801(C). Thus, although the guardian ad litem could properly discuss the course of her investigation, none of the persons with whom she spoke were present at the hearing and she had no firsthand knowledge of the matters that were relayed to her. Consequently, reliance upon the report or testimony as establishing these things as fact would be improper. *In re O.H.* at ¶ 25, quoting *State v. Richcreek*, 196 Ohio App.3d 505, 2011–Ohio–4686, ¶ 22 (6th Dist.) ("'[w]here the facts to be proven at trial and the substantive content of an out-of-court statement coincide, it can be presumed that the proponent is offering the statement for its truth.'"); *In re Sypher*, 7th Dist. No. 01–BA–36, 2002 WL 378333, *3 (Mar. 11, 2002) (the trial judge, as fact finder, commits error by relying on inadmissible hearsay statements to make factual findings or reach the ultimate conclusion in the case).

{¶15} Here, Mother was seeking to admit the out-of-court statements of the twins, their teachers, and the school counselor for the purpose of proving the truth of what they said, i.e., that the children's school performance was suffering and they were experiencing stress because they were residing with Father for part of the school week. However, the teacher and school counselors were not witnesses and the guardian ad litem did not witness the events that were related to her by these individuals.

{¶16} Although hearsay was admitted at the hearing, we disagree with Father's suggestion that the trial court relied upon the hearsay in determining that there was a change in circumstances. We note that Father did not specifically object to the magistrate's decision on the basis that the change of circumstances evidence was established through hearsay. Instead, he argued that a change of circumstances finding was against the manifest weight of the evidence.

In overruling Father's objection to the weight of the evidence supporting the change in circumstances, the trial court merely stated:

> Father's ninth Objection is overruled. There has been a change in the children's circumstances and the Court has considered the relevant statutory factors and determines that a change in parenting time is in the children's best interest. *Gunderman v. Gunderman.,* 2009-Ohio-3787.

{¶17} Thus, there is no clear demonstration in the court's consideration of Father's change of circumstances objection that the trial court did, in fact, base its conclusion that there had been a change in circumstances on the hearsay evidence.

{¶18} However, we acknowledge that the trial court may have suggested elsewhere in its judgment that the hearsay evidence was properly considered by the magistrate, as it noted in its statement of facts that the magistrate's finding of a change in circumstances was based on evidence in the guardian's report that the midweek transitions between the parents' homes "was creating some difficulties for the children particularly with respect to school." The guardian had not testified about any of her own observations of the children, but only about what others had told her about the twins' problems at school. In addition, the trial court overruled Father's more general objection to the admission of the hearsay evidence.

{¶19} Nevertheless, even if the trial court may have considered hearsay evidence, we conclude that the outcome of the case was not affected because there were sufficient facts adduced at the trial, through properly admitted evidence, to establish that a change in circumstances had occurred.

### Admissible Evidence of Change in Circumstances

{¶20} Although R.C. 3109.04(E)(1) does not enumerate the types of "circumstances" that the trial court may consider, "[o]bviously, [those circumstances] may include any of the particular circumstances identified in paragraph (F)(1)(a)-(j) of that section." *Averill*, 2001 WL

1597881, *3. Those circumstances explicitly include the children's interaction with their parents; their adjustment to home, school, and community; and each parent's facilitation of, or interference with, the other's parenting time. R.C. 3109.04(F)(1)(c), (d), and (f) and (i). A change of circumstances can also include a breakdown in communication between the parents and their inability to communicate and cooperate. *See*, *e.g*., *Milner v. Milner*, 10th Dist. No. 99AP-13, 1999 WL 1139965, *3 (Dec. 14, 1999) * 3 (affirming trial court's finding of a sufficient change of substance based on "'the parties' behavior and unwillingness to comply with the terms and spirit of the shared parenting plan[.]"); *Gomez v. Gomez*, 7th Dist. No. 08 NO 356, 2009-Ohio-4809, ¶ 21-34 (citing refusal of mother to communicate with father and extreme volatility requiring police intervention); *Headley v. Headley*, 11th Dist. No. 99-A-0049, 2000 WL 1458961, *5 (Sept. 29, 2000) (holding that the requisite change was demonstrated by the mother's hostile and controlling behavior that interfered with the father's visitation rights).

{¶21} In this matter, the record contains non-hearsay testimony from which the trial court could properly conclude that a change of circumstances existed. Both parties testified as to their own observations of the difficulties that children were experiencing due to the midweek moves between their parents' homes. Both parties also described circumstances which indicated increasing volatility between them including a number of instances where police were called. In addition, there was admissible evidence reflecting a breakdown in the parents' communication and cooperation regarding the children and that the children were suffering because of it.

{¶22} According to Mother, the conflict and breakdown in communication became a problem for the children during the 2009-2010 school year. Mother filed her motion at the end of September, one month after Father had allegedly violated the vacation provision of the decree by keeping the children for one week at the beginning of the school year without giving her any

notice. By the time of the hearing the following summer, each parent had filed numerous contempt motions, alleging that the other had violated various terms of the decree. Each parent had also called the police due to the heightened conflict between them during exchanges of the children. In fact, the conflict had become so problematic during exchanges that Mother obtained a civil protection order after Father allegedly had threatened and grabbed her.

{¶23} According to Mother, her face-to-face communications with Father had become antagonistic. She attempted to communicate in writing; however, Father never responded to her. Father conceded that he did not communicate with Mother or with the twins' school. He assumed that they would contact him if they needed to. Moreover, there was also ample evidence that the children were suffering as a result of this breakdown in communication between the parents. In addition to conflicts occurring in front of the children, Mother related that the children's homework assignments often fell through the cracks because they would receive assignments at the beginning of the week, but Father would not communicate with Mother or send projects that had been started at his house to be completed later in the week at Mother's home.

{¶24} There was considerable testimony concerning intense conflict that had developed with respect to the children's clothing when the children were going back and forth from the parties' respective homes. The parties offered testimony concerning several incidents that happened in the children's presence. It was not disputed that Father often disapproved of the clothing that Mother provided for the children, claiming that some of the clothing was ill-fitting or not age-appropriate. Rather than communicating his concerns to Mother to attempt to resolve the issue, or simply providing different clothing for the children to wear while they resided with him, Father would confiscate the clothing he found objectionable and refuse to return it. At the

time of the hearing, Father admitted that he had shoes and clothing in the basement of his home that, according to him, did not fit the children. He had admittedly sent the children to school and/or back to Mother's house without clothing items that included gym shoes, winter coats, and a t-shirt for which the twin daughter had particular affection.

{¶25} Father's behavior concerning the children's clothing had once necessitated police involvement and occurred while Mother was picking the children up from Father's home. Mother testified that Father would not allow her to take the children home in the clothing that they were wearing, because it did not fit properly. He would not release the children to her until she went back to her home and brought different clothing to his home. Mother refused to go back home to get more clothing and ultimately police were called.

{¶26} Significantly, the ongoing conflict was causing the children anxiety, as the children feared that any clothing item worn to Father's home could be confiscated. Mother further testified that Father had inappropriately expressed his disapproval of the clothing in the children's presence, and that he had made disparaging remarks to one of them about her weight.

{¶27} Mother described Father as rigid and controlling and unwilling to cooperate with her about the children. She gave numerous examples of how everything had to be his way and that he often made unilateral decisions about the children. Assuming the trial court found her testimony to be credible, there was additional evidence which corroborated some of Mother's claims. The guardian ad litem and the family court services evaluator also testified about their observations of Father. Both suggested that he was rigid and tended to focus on what he wanted for his children, not necessarily what was reasonable, or in their best interests. Father admitted during his own testimony that he did not communicate with Mother and that he made unilateral decisions without her involvement. Father acknowledged that he had kept the children's clothing

but that there was no point in returning it to Mother because it did not fit. It was further apparent from his testimony that he was not willing to work with Mother to resolve these problems, unless the resolution was accomplished on his terms.

{¶28} Consequently, after reviewing only the evidence that was properly before the trial court, there was more than ample admissible evidence demonstrating a sufficient change in the children's circumstances that arose since the parties' divorce.

**Best Interests of the Children**

{¶29} Finally, Father argues that the trial court's best interest finding was not supported by the evidence presented at the hearing. Father essentially reiterates his arguments that there was no change of circumstances, disputing the evidence that the midweek moves between the homes of Mother and Father were negatively affecting the children emotionally and academically.

{¶30} The trial court explicitly indicated in its judgment that it considered all of the best interest factors set forth in R.C. 3109.04(F)(1). Of particular relevance here, those factors included the children's interaction with their parents, their adjustment to home, school, and community, and each parent's facilitation of, or interference with, parenting time with the other parent. R.C. 3109.04(F)(1)(c), (d), and (f) and (i). As explained already, the trial court had substantial admissible evidence before it to support its conclusion that moving back and forth between the parents' homes during the school week was too disruptive to the children's lives. The evidence further demonstrated that those problems were exacerbated by Father's refusal to communicate and cooperate with Mother regarding the children. There was also evidence before the court to support a conclusion that the children's stress about their problems with missing homework and Father confiscating their clothing could be eliminated if they resided with Mother

during the school week and went to school from her home each day. Father has failed to demonstrate that the trial court's best interest finding was against the manifest weight of the evidence.

{¶31} Because there was substantial testimony from first-hand observations of the witnesses to demonstrate that there had been the requisite change in the circumstances of the children and that it was in the children's best interest to reside with Mother during the school week, Father's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT REMOVING THE GUARDIAN AD LITEM AND REMANDING THE CASE FOR FURTHER HEARING WITH THE APPOINTMENT OF A NEW GUARDIAN AD LITEM THAT WOULD BE FAIR TO BOTH PARENTS AND THAT WOULD PROPERLY REPRESENT THE CHILDREN'S WISHES AND BEST INTEREST AS HER RECOMMENDATIONS AND TESTIMONY PRESENTED WERE UNFAIRLY BIASED AGAINST [FATHER] AND/OR THE TRIAL COURT ABUSED ITS DISCRETION [BY] NOT HOLDING AN IN CAMERA HEARING SO THAT THE CHILDREN COULD GIVE THEIR TRUE WISHES AS SAME WERE NOT REPRESENTED BY THE GUARDIAN AD LITEM AT TRIAL.

{¶32} Through his second assignment of error, Father contends that the trial court erred by failing to remove the guardian ad litem and/or by failing to conduct an in camera interview of the children. However, Father did not seek removal of the guardian ad litem in the trial court, nor did he request that the trial court conduct an in camera interview of the children. He also failed to raise either of these issues through his objections to the magistrate's decision, but raises them for the first time on appeal.

{¶33} Civ.R. 53 (D)(3)(b)(iv) provides:

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R.

53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

Because Father did not raise these issues during or prior to the hearing or through his objections to the magistrate's decision and he does not argue plain error on appeal, his second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING FATHER IN CONTEMPT FOR VIOLATING THE PARENTING TIME SCHEDULE AS HE GAVE THE PROPER NOTICE OF THE TIME HE WISHED TO SPEND WITH HIS CHILDREN AND FATHER DID NOT TRAVEL WITH THE CHILDREN AS THEY WERE TO SCHOOL EVERYDAY IN A TIMELY FASHION AND HIS REQUEST WAS CONSISTENT WITH THE PARTIES' PAST PRACTICES AND MOTHER OBJECTED TO THE FATHER HAVING THIS VACATION PARENTING TIME SOLELY TO WITHHOLD SUCH VACATION TIME FROM FATHER AS THE PAST PRACTICES OF FATHER'S EMPLOYMENT AND SCHEDULE PROVIDE THAT HE WOULD HAVE THE CHILDREN FOR VACATION TIME THE FIRST AND LAST WEEK OF AUGUST.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING PURGE CONDITIONS ON FATHER THAT HE LOSE TWO WEEKENDS OF PARENTING TIME WITH THE CHILDREN, OR ESSENTIALLY ONE MONTH OF WEEKEND TIME, AS THE EVIDENCE AT TRIAL PROVIDED THAT FATHER KEPT THE CHILDREN FOR TWO DAYS AND THAT HE PAY THE WIFE'S ATTORNEY'S FEES AND COSTS AS SAID FEES WERE NOT REASONABLE.

{¶34} This Court will combine Father's third and fourth assignments of error because he argues them jointly. Both of these assigned errors pertain to the trial court finding Father in contempt for violating the vacation provision of the parties' 2008 shared parenting plan because Father failed to give Mother the requisite 30-day notice to keep the children for a one-week vacation and because the vacation did not occur while the children were on recess from school.

{¶35} The trial court ordered Father to serve three days in jail. The trial court further ordered that Father could purge himself of the contempt by making up Mother's lost parenting

time by forfeiting two weekends with his children and by paying a portion of Mother's attorney fees.

{¶36} The trial court imposed a civil contempt sanction because its primary purpose was not to punish Father but to compensate Mother for her additional attorney fees and time lost with the children due to Father's violation of the divorce decree. *See Forrer v. Buckeye Speedway, Inc.,* 9th Dist. No. 07CA0027, 2008-Ohio-4770, ¶ 15.

{¶37} A challenge on appeal from a civil contempt finding becomes moot when a party purges himself of the contempt. *Nagel v. Nagel*, 9th Dist. No. 09CA009704, 2010-Ohio-3942, ¶ 28. Mother asserts that the contempt issue is now moot.

{¶38} During the pendency of this appeal, Mother supplemented the record with evidence that Father had purged himself of the contempt by forfeiting the two weekends with the children and paying the attorney fees. Father does not dispute that he has purged the contempt citation, but contends that the issue is not moot because the trial court's civil contempt finding could subject him to more severe sanctions in any future contempt proceedings. Father cites no legal authority to support his argument, however, and has failed to demonstrate that this Court should depart from its prior precedent in *Nagel*. Because Mother has provided this Court with undisputed evidence that Father has purged himself of the contempt citation by surrendering the two weekends with his children and paying the attorney fees, the contempt issue is moot and this Court may not review it. *See id.* Consequently, this Court will not address Father's third and fourth assignments of error.

III.

**{¶39}** Father's first and second assignments of error are overruled and his remaining assignments of error were not addressed because they are moot. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

——

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

CARR, J.
MOORE, J.
CONCUR.

APPEARANCES:

RONALD T. GATTS, Attorney at Law, for Appellant.

LESLIE S. GRASKE, Attorney at Law, for Appellee.

CINDY ZANIN, Guardian ad Litem.