[Cite as *In re M.P.*, 2015-Ohio-4417.]

STATE OF OHIO        )  
                         )ss:  
COUNTY OF LORAIN    )

IN THE COURT OF APPEALS  
NINTH JUDICIAL DISTRICT

IN RE: M.P.  
      M.P.  
      E.K.

C.A. No.     14CA010693

APPEAL FROM JUDGMENT  
ENTERED IN THE  
COURT OF COMMON PLEAS  
COUNTY OF LORAIN, OHIO  
CASE Nos.    13 JC 39792  
               13 JC 29793  
               13 JC 39794

DECISION AND JOURNAL ENTRY

Dated: October 26, 2015

SCHAFER, Judge.

**{¶1}** Appellant, Marsheen P. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights to three of her minor children and placed them in the permanent custody of Lorain County Children Services ("LCCS"). This Court reverses and remands.

I.

**{¶2}** Only three of Mother's minor children are at issue in this case: M.P., a female born January 28, 2005; M.P., a male born March 30, 2006; and E.K., born October 27, 2009. The fathers of the children are not parties to this appeal.

**{¶3}** When LCCS initially became involved with this family on a voluntary basis, Mother was living in her home with other adults and seven minor children, including these three children, Mother's older minor child, and Mother's three young grandchildren. Mother had

agreed to care for her three young grandchildren because their mothers, Mother's daughters, had substance abuse problems. LCCS opened a voluntary case based on concerns that the children while in Mother's care were not adequately supervised and had been exposed to domestic violence in the home.

{¶4} On August 9, 2013, LCCS filed dependency and neglect complaints, alleging that Mother's one-year-old grandchild had been found outside the home without adult supervision. LCCS alleged continuing concerns about domestic violence between Mother and the father of E.K., violence between Mother's oldest adult daughter and the father of two of the grandchildren, and that Mother was not adequately supervising her minor children and grandchildren who were in her care. Mother would later concede that she was overwhelmed by caring for seven minor children.

{¶5} Although LCCS initially requested an order of protective supervision of the children, shortly before the adjudicatory and dispositional hearings, an incident of domestic violence between Mother and her oldest daughter led to the children's removal from the home. M.P., M.P., and E.K. were adjudicated as neglected and dependent children and placed in the temporary custody of LCCS. The trial court adopted the case plan, which was later amended to reflect the children's removal from the home, and focused on reuniting Mother only with her own minor children.[1] The reunification goals required Mother to engage in services to address the instability and domestic violence in her home.

---

[1] Mother's oldest minor child was later placed in a planned permanent living arrangement and Mother did not appeal that dispositional order.

{¶6}   On April 17, 2014, LCCS filed an amended case plan to terminate Mother's visits with the children.  LCCS explained that the children had experienced increased behavioral problems, which it attributed to Mother behaving inappropriately during the visits by being argumentative with LCCS and inappropriately speaking to the children about the case.  Although Mother did not file timely objections to the amended case plan, she later moved the trial court to reinstate her visits, but the trial court denied her motion.

{¶7}   On May 22, LCCS moved for permanent custody of the children.  Aside from terminating Mother's visits one month earlier, the requirements for Mother on the case plan had remained essentially the same during the six months that she had been given to remedy the conditions that caused the children to be removed from her home.  Following a hearing on the permanent custody motion and Mother's request for a six-month extension of temporary custody, the trial court found that the children could not be returned to Mother's custody within a reasonable time or should not be returned to her custody and that permanent custody was in their best interests.

{¶8}   Mother appeals and raises three assignments of error.  This Court confines its review to Mother's second assignment of error because it is dispositive.

II.

**ASSIGNMENT OF ERROR NO. II**

THE TRIAL COURT ERRED WHEN IT ALLOWED AND RELIED UPON TESTIMONY CONCERNING ALLEGED DISCLOSURES MADE BY THE MINOR CHILDREN RELATING TO ABUSE.

{¶9}   Mother's second assignment of error is that the trial court erred in admitting and relying upon improper hearsay statements of the children in reaching its permanent custody decision.  The children did not testify at the hearing.  Instead, LCCS repeatedly attempted to

admit testimony about statements that the children made to witnesses about acts of abuse or inappropriate discipline that they experienced while living with Mother. Although the trial court excluded some of that testimony based on hearsay objections, it admitted some witness testimony that the children had reported being subjected to inappropriate and/or potentially abusive treatment while living in Mother's home.

{¶10} Although some of the children's statements to their counselors about past trauma may have been admissible under Evid.R. 803(4) as statements made for purposes of psychological diagnosis or treatment, *see In re A.R.*, 9th Dist. Summit No. 22836, 2006-Ohio-1548, none of that testimony established that Mother had subjected any of the children to abuse. The therapist who counseled E.K and the male M.P. testified that both children suffered anxiety from past trauma, but she had been unable to determine the source of their anxiety.

{¶11} The counselor of the female M.P. merely testified that M.P. would get anxious about visits with Mother and that she was afraid Mother would beat her. This testimony was not a disclosure by M.P. that she had ever been beaten by Mother, but only the counselor's unexplained conclusion that the child feared being beaten.

{¶12} Moreover, before admitting a child's statement under Evid.R. 803(4), the trial court should consider the circumstances surrounding the child's statement to the treatment provider. *State v. Dever*, 64 Ohio St.3d 401, 410 (1992). It was not disputed that M.P. had multiple mental health diagnoses that were so severe and unstable that she was in a residential treatment facility and was often placed in physical restraints because she posed a threat to herself and/or others. Even after her visits with Mother were terminated, M.P.'s mental health had not stabilized. Doctors continued to adjust her psychiatric medications, she continued to have

behavioral outbursts that sometimes required that she be physically restrained, and she remained institutionalized.

{¶13} In addition to testimony of the counselors, other witnesses testified about the children's out-of-court statements. None of that testimony fell within a recognized exception to the rule against hearsay evidence. LCCS incorrectly argued at the hearing and again on appeal that the testimony of the guardian ad litem about what the children told him fell within an exception to the hearsay rule. This Court has explicitly recognized that the report and testimony of the guardian ad litem may include out-of-court statements of people interviewed, given the unique role of the guardian ad litem to investigate the circumstances and parties in the case and to provide a recommendation to the trial court about the best interests of the children. *See Sypherd v. Sypherd,* 9th Dist. Summit No. 25815, 2012-Ohio-2615, ¶ 12. As this Court further explained in *Sypherd*:

> The intended purpose of the guardian ad litem gathering that information, however, is not to offer evidence to the court of the facts that she gathered but to explain the basis for her recommendation. In other words, when a guardian ad litem relays what a person told her, it is not for the purpose of establishing the truth of the matters relayed. Rather, it is for the purpose of describing the investigatory process of the guardian ad litem and the matters which may have influenced her opinion as to the best interests of a child.

*Id*. Unless those out-of-court statements fall within a recognized exception to the hearsay rule, they are not admissible "for the purpose of establishing the truth of the matters relayed." *Id.* at ¶ 12–13; *In re A.K.*, 9th Dist. Summit No. 26291, 2012-Ohio-4430, ¶ 27. Consequently, as there is no suggestion that the children's out-of-court statements to the guardian ad litem fell within an exception to the hearsay rule, the trial court erred in allowing his testimony about what the children told him about being abused and/or inappropriately disciplined in Mother's home.

{¶14} Because this hearing was held before a judge, this Court will presume that the judge considered only the relevant, material, and admissible evidence in arriving at its judgment unless the record affirmatively demonstrates otherwise. *In re D.B.*, 9th Dist. Medina Nos. 03CA0015-M, 03CA0018-M, 2003-Ohio-4526, ¶ 9, citing *State v. Richey*, 64 Ohio St.3d 353, 357–358 (1992). From the face of the permanent custody judgment, however, it is apparent that the trial court based its factual findings about abuse in the home on the children's hearsay statements because there was no other evidence to support those findings.

{¶15} This Court must next determine if the trial court's consideration of the hearsay evidence constituted reversible error or whether there was sufficient admissible evidence to support the trial court's decision. *See In re Reeves*, 9th Dist. Summit Nos. 19650, 1963, 19706, 19669, 19674, 19707, 19672, 19705, 2000 WL 727532, *20 (June 7, 2000). Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* Former R.C. 2151.414(B)(1)[2] and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶16} The trial court found that the first prong of the permanent custody test had been satisfied because the children could not be returned to Mother within a reasonable time or should not be returned to her because Mother had failed to substantially remedy the conditions that

---

[2] R.C. 2151.414(B)(1) was amended effective September 17, 2014.

caused the children to be placed outside the home. *See* R.C. 2151.414(E)(1). "Pursuant to the plain language of R.C. 2151.414(E)(1), a finding under this section must be premised on 'reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home.'" *In re D.K.,* 9th Dist. Summit Nos. 26840, 26846, 2013-Ohio-3513, ¶ 10. Consequently, this Court will review the record to determine whether LCCS established by clear and convincing evidence that, despite reasonable case planning efforts, Mother failed to substantially remedy the conditions that caused the children's initial and ongoing removal from the home.

**Reasons for Removal**

{¶17} There was no proper evidence before the trial court to establish that the children had been removed from the home or continued to be placed outside the home because they had been abused and/or inappropriately disciplined by Mother or anyone else in the home. The reasons for the children's initial removal from the home are those set forth in the adjudicatory decision. *See In re G.D.*, 9th Dist. Summit No. 27337, 2014-Ohio-3476, ¶ 16. The trial court did not adjudicate M.P., M.P., or E.K. as abused children, nor were there any findings in the adjudicatory decision that they had been subjected to any abuse in the home. Mother was not charged with or convicted of abuse of her children and nothing about abuse or improper discipline of the children was included in any of the case plans.

{¶18} Instead, the adjudicatory decision included findings that the children had been removed from the home for two primary reasons: (1) they were exposed to domestic violence in the home, and (2) Mother failed to adequately supervise them or otherwise provide them with a safe and stable home. LCCS focused the case plan and its admissible evidence at the hearing on those two primary reasons for the children's removal. At one time, LCCS was also concerned

that Mother might have drug or alcohol problems, but the caseworker testified at the permanent custody hearing that Mother had demonstrated that she did not have a substance abuse problem.

Domestic Violence

{¶19} As set forth in the adjudication and the case plans, the agency's concerns about domestic violence in the home pertained to a history of domestic violence perpetrated against Mother by the father of E.K. Most recently, that father had perpetrated domestic violence against Mother and her two adult daughters, which resulted in the father being convicted and incarcerated for felony domestic violence. He remained incarcerated throughout most of this case.

{¶20} Shortly before the adjudicatory hearing, there was also an incident of domestic violence between Mother and her oldest daughter. Although LCCS witnesses repeatedly insinuated that Mother seriously harmed her daughter during that altercation, those assertions are not supported by the record. The actual record facts surrounding that incident are set forth in the stipulated findings upon adjudication, the journalized case plans, and testimony of Mother at the hearing. Mother's oldest daughter had a substance abuse problem and a history of domestic violence with other men, including altercations at Mother's home. The initial case plan and all amended case plans provided that if the oldest daughter came to Mother's home intoxicated, Mother was not to allow her to stay. Shortly before the adjudicatory and dispositional hearings, the daughter came to Mother's home intoxicated and Mother was unable to persuade her to leave. A physical altercation ensued, both women sustained injuries and, after the police responded to Mother's home, the daughter left. Later, the daughter was found unconscious at another location and was transported to the hospital. The evidence did not establish that Mother had caused the daughter's unconsciousness or her need for medical treatment.

{¶21} Nevertheless, as a result of the incident between Mother and her oldest daughter, the children were removed from Mother's home, but the pertinent requirements of the case plan remained essentially the same. To address her history of domestic violence, Mother was required to complete a domestic violence education program, which she did.

{¶22} Mother was also required to engage in mental health treatment to address her own history of trauma as the victim of abuse. She obtained a mental health assessment and engaged in counseling during this case to address her history of being a victim of domestic violence, dating back to when she was a child living in foster care. Although Mother's attendance in counseling had not been consistent throughout the case, she was engaged in counseling at the time of the hearing. Mother testified that she was working through her anger and learning that she should stay away from unhealthy relationships and work with LCCS, rather than treating the agency as an enemy.

{¶23} The case plan also required that Mother have no contact with the father of E.K. Although the case plan required that she obtain a no contact order against him, which Mother apparently did not do, the father was incarcerated and Mother had no contact with him during the six months that she had to work on the case plan.

{¶24} Despite repeated suggestions throughout the hearing to the contrary, Mother was only required to comply with the written requirements of the journalized case plans, not additional requirements that the caseworker or guardian ad litem seemed to believe had been imposed upon her. *See In re S.D.-M*, 9th Dist. Summit Nos. 27148, 27149, 2014-Ohio-1501, ¶ 26-27. Although LCCS presented evidence that Mother also had been the victim of domestic violence perpetrated by the father of her older children and criticized her for having contact with him, the case plan did not require Mother to limit her contact with the father of the older

children. In fact, their visits with the children were arranged to be at the same time and the agency had even praised the father because he "stepped up to help [Mother] with the children[.]"

{¶25} The caseworker and the guardian ad litem similarly implied that Mother violated the requirements of the case plan by having contact with her oldest daughter. The case plan did not prohibit Mother from seeing her oldest daughter or allowing her in her home. Instead, the case plan provided throughout this case that the oldest daughter could not "reside" in Mother's home, that the daughter could not be in the home with the father of her children, and that she was not allowed in the home if she appeared to be intoxicated. There was no evidence before the trial court that Mother failed to comply with that requirement of the case plan after the children were removed from the home.

Parenting Classes and Visitation

{¶26} In addition to addressing her domestic violence issues, Mother was required to complete parenting classes and demonstrate to LCCS that she could implement what she had learned. Although Mother stopped working with her original parenting mentor, she completed another program of parenting classes and visited her children regularly until her visits were terminated. Because Mother's visits were terminated five months into the case plan, Mother had little opportunity to demonstrate that she could implement what she had learned in parenting classes.

{¶27} The caseworker testified that Mother's visits were terminated because they were "chaotic," Mother inappropriately spoke to the children about the case plan, and was hostile toward LCCS. The agency also blamed Mother for the children's increased behavioral problems before and after visits. To begin with, this Court questions the reasonableness of the agency's reunification efforts in this regard. The children were removed from Mother's care because she

was overwhelmed by caring for seven minor children and her relationship with her adult daughters and the father of her older children was admittedly problematic. Given that the case plan goal was to reunite Mother only with her own minor children, it unclear why the agency arranged for this entire extended family of seven minor children and at least four adults to visit together. The chaos that was observed during the visits might have been prevented by allowing Mother to have some visitation with her minor children without her grandchildren and adult daughters.

**{¶28}** Next, LCCS faulted Mother for speaking to her children about the case plan. It is understandable why children services agencies prohibit the parents from discussing the merits of the case with their children, yet it is also somewhat unrealistic to expect that parents can turn off their emotions and/or refuse to answer their children's questions when asked. Mother admitted that she should not have spoken to her children about the case, but that violation of the rules, in and of itself, does not seem to have been a sufficient justification for terminating Mother's visits.

**{¶29}** LCCS also pointed to Mother's poor behavior toward the agency. The primary evidence about her behavior, however, was limited to an incident in which Mother called the caseworker a name. Mother admitted that she became upset and emotional when she learned that the female M.P. would not be attending a visit, and that she called the caseworker an "idiot." LCCS witnesses repeatedly testified about Mother calling the caseworker an idiot, but no further details about that incident were admitted into evidence. There was no testimony that Mother became overly aggressive or violent, behaved irrationally, threatened anyone, or that she did anything more extreme than calling the caseworker an "idiot."

**{¶30}** Finally, the agency blamed Mother for the children's behavior problems before and after the visits. This Court has reviewed many permanent custody cases in which agencies

presented testimony about the children's behavioral problems before or after visits in an apparent attempt to persuade the trial court that, because the children act out, something wrong must be happening during the visits. This Court cannot simply speculate about the cause of the children's behavioral changes, however.

{¶31} Parental visitation during permanent custody cases, by its nature, may trigger a variety of emotional and behavioral reactions from the children. These are children who have been removed from their home, do not likely understand why, do not know when or if they will return home or find a new home, and their parents are forbidden from discussing those issues with them. Behavioral reactions to visitation could be the result of a myriad of emotions, including love, fear, loss, anger, or confusion. Without evidence of what occurred during the visits or expert testimony to establish cause and effect, this Court is not inclined to draw conclusions about a parent from the mere fact that the children's behavior changes before or after the visits.

{¶32} The evidence here was simply that the children had behavioral changes before and after visits. All three children had behavioral problems that escalated during this case, even after visits with Mother stopped. Moreover, no facts or expert testimony linked their behavioral problems to any inappropriate behavior by Mother.

### Stable Housing and Income

{¶33} At the hearing, the caseworker testified that Mother had obtained stable housing. The evidence demonstrated that Mother had rented a four-bedroom home where she lived by herself. Although LCCS presented evidence that the home was sparsely furnished, there was no evidence that it was not stable or suitable for the children.

{¶34} Regarding Mother's income, the caseworker testified that she had been unable to verify that Mother was employed. The case plan provided that Mother would "[w]ork or show stable source of income" and that she would provide documentation to verify her employment when asked. The caseworker did not explain how she had attempted to verify Mother's employment or whether she had ever asked Mother for documentation. According to Mother, which the agency did not dispute, rather than asking Mother to provide pay stubs, LCCS called one of her former employers, causing Mother to lose her job. Mother testified that she revoked the release that she had signed and told the agency that she would provide pay stubs, but that she did not want the caseworker calling her place of employment. At the hearing, Mother admitted numerous pay stubs to demonstrate that she had been employed throughout most of the case.

{¶35} In conclusion, this Court cannot conclude that there was sufficient properly-admitted evidence before the trial court to support its conclusion that Mother had failed to substantially remedy the conditions that caused her children to be placed outside the home. In fact, from the evidence before the trial court, it appeared that Mother had made significant progress on the case plan. She had been given only six months to work on the case plan and only five months of visits with her children before LCCS moved for permanent custody. By the time of the hearing, Mother had demonstrated to the agency that she had no substance abuse problems, had secured stable employment and housing, completed parenting classes and a domestic violence course, and was engaged in counseling. Consequently, we cannot conclude that the trial court's error in admitting inadmissible hearsay constituted harmless error. Mother's second assignment of error is sustained.

**REMAINING ASSIGNMENTS OF ERROR**

**{¶36}** Mother's remaining assignments of error assert that the trial court's judgment was against the manifest weight of the evidence. Because Mother's second assignment of error is dispositive, the remaining assignments of error have been rendered moot and will not be addressed. *See* App.R. 12(A)(1)(c).

III.

**{¶37}** Mother's second assignment of error is sustained, which rendered moot her remaining assignments of error. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is reversed and remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JULIE A. SCHAFER
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

KATHLEEN M. AMERKHANIAN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and PREETHI KISHMAN, Assistant Prosecuting Attorney, for Appellee.

THOMAS J. MCGUIRE, Attorney at Law, for Father.

CLAUDE THOMPSON, Guardian ad Litem.