[Cite as *Amero v. Amero*, 2013-Ohio-5636.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

ROBERT L. AMERO, )
　)
　　PLAINTIFF-APPELLEE, )
　) CASE NO. 12 MA 142
V. )
　) OPINION
MYGDALIA AMERO NKA ALVAREZ, )
　)
　　DEFENDANT-APPELLANT. )

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from Court of Common Pleas, Domestic Relations Division of Mahoning County, Ohio Case No. 09DR357 |
| JUDGMENT: | Affirmed |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | Attorney Louis E. Katz 70 West McKinley Way Poland, Ohio 44514 |
| For Defendant-Appellant | Attorney Michael A. Partlow 112 S. Water Street, Suite C Kent, Ohio 44240 |

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: December 13, 2013

DONOFRIO, J.

{¶1} Defendant-appellant, Mygdalia Alvarez, appeals from a Mahoning County Common Pleas Court judgment reallocating parental rights and responsibilities to name plaintiff-appellee, Robert Amero, as the residential parent of the parties' two children.

{¶2} The parties were divorced on March 17, 2010. They share two children: Jacob, d.o.b. 12/2/98, and Melina, d.o.b. 11/3/00. Pursuant to their separation agreement, appellant was named the children's residential parent. Appellee was granted visitation on Mondays and Wednesdays from after school until 8:00 p.m. and every other weekend during the school year and every other week during the summer. At the time of the divorce, appellant resided in Austintown, Ohio and the children attended Austintown Schools.

{¶3} In April 2010, appellant and the children relocated to Niles, Ohio and the children attended Niles Schools.

{¶4} In July 2011, appellant and the children relocated to Cleveland and appellant enrolled the children in a charter school in Brooklyn, Ohio called Pearl Academy.

{¶5} On July 28, 2011, appellee filed a motion to reallocate parental rights and responsibilities so that he would become the children's residential parent.

{¶6} The matter proceeded to a hearing before a magistrate where the magistrate heard testimony from the parties, the guardian ad litem, the principal of Pearl Academy, and appellant's mother. The magistrate also conducted an in-chamber interview with the children. The magistrate then issued a 36-page decision detailing the evidence, finding a significant change in circumstances, and determining it was in the children's best interest to reallocate parental rights and responsibilities to name appellee as their residential parent.

{¶7} Appellant filed objections to the magistrate's decision. The trial court held a hearing on appellant's objections. Thereafter, it overruled the objections and entered judgment granting appellee's motion to reallocate parental rights and responsibilities and naming appellee as the children's residential parent.

{¶8} Appellant filed a timely notice of appeal on August 9, 2012.

{¶9} Appellant filed her initial brief pro se. Afterwards, she retained counsel who filed the reply brief. Appellant raises a single assignment of error stating:

THE TRIAL COURT'S FINDING OF CHANGED CIRCUMSTANCES, AND THAT A MODIFICATION OF THE RESIDENTIAL CUSTODIAL PARENT WAS IN THE BEST INTEREST OF THE MINOR CHILDREN WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION.

{¶10} Appellant argues the trial court erred in finding a significant change of circumstances since the divorce. She also takes issue with the court's finding that the move to Cleveland left appellee with no meaningful way to participate in the children's homework or to meet with their teachers. Appellant argues that in this age of communication, appellee could still communicate with the children's teachers. She asserts that her move to Cleveland did not substantially impair the meaningful involvement of appellee in the children's lives. Appellant goes on to point to the magistrate's statement that Melina expressed her desire to remain with appellant in Cleveland. She further points to the finding that both children have adjusted to the move.

{¶11} Appellant also takes issue with the findings that: she made the decision to take the children away from appellee; she appears to be placing her own best interest ahead of the children's best interest; and she is willing to split the children up in order to retain custody of Melina.

{¶12} Initially, we must address appellee's arguments regarding the record on appeal.

{¶13} First, appellee takes issue with the fact that appellant filed only a transcript of the hearing before the magistrate and did not file a transcript of the proceedings before the trial court. What appellee fails to consider, however, is that all of the evidence was presented at the magistrate's hearing. This was where the

parties and other witnesses testified and where the exhibits were admitted. The hearing before the trial court on appellant's objections consisted only of counsel's arguments. In ruling on appellant's objections and rendering its judgment, the trial court relied on the transcript and exhibits from the magistrate's hearing. It made no mention of listening to or considering any other evidence. Thus, we too will consider the transcript and exhibits from the magistrate's hearing.

{¶14} Second, appellee contends that appellant failed to include the exhibits as part of the record on appeal. This issue was resolved by a remand to the trial court. The court put on a judgment entry stating that it reviewed and considered the parties' exhibits and ordered that they be made part of the record on appeal.

{¶15} Third, appellee takes issue with the fact that there is no transcript of the magistrate's in-chamber interview with the children. In its judgment entry, the trial court stated that neither party requested a transcript of the children's interview and, therefore, it considered only the magistrate's findings in this regard. We are limited to reviewing the record before the trial court.

{¶16} Next, we must move on to the merits.

{¶17} R.C. 3109.04 guides a trial court's discretion in a custody modification proceeding. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). A trial court's decision regarding the custody of a child which is supported by competent and credible evidence will not be reversed absent an abuse of discretion. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus; *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 603, 737 N.E.2d 551 (7th Dist.2000). A trial court has broad discretionary powers in child custody proceedings. *Reynolds v. Goll*, 75 Ohio St.3d 121, 124, 661 N.E.2d 1008 (1996). This discretion should be accorded the utmost respect by a reviewing court in light of the gravity of the proceedings and the impact that a custody determination has on the parties involved. *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

{¶18} R.C. 3109.04(E)(1)(a) provides:

(E)(1)(a) The court shall not modify a prior decree allocating parental

rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

**{¶19}** Pursuant to the statute, in order for a court to reallocate parental rights and responsibilities and change the residential parent, the court is required to find (1) that a change in circumstances has occurred since the prior custody order; (2) that the change in custody is in the child's best interests; and (3) that the benefits of the change in custody outweigh the harm caused by the change. *Vella v. Vella*, 7th Dist. No. 10-JE-7, 2011-Ohio-1182, ¶23.

**{¶20}** The evidence adduced by the parties was as follows.

**{¶21}** Sharon Jones, the principal of Pearl Academy, was the first witness. She testified that Pearl Academy was in its first year of existence and, therefore, did not have an academic rating. (Tr. 109). Jones stated that she had no concerns regarding the children's education or behavior. (Tr. 73, 75). She noted that both children were pleasant and "on task" in the classroom. (Tr. 76). She also acknowledged that Jacob had some problems with missing assignments that negatively affected his grades. (Tr. 100-101).

**{¶22}** Appellee testified next. He stated that at the time of the divorce,

appellant and the children lived in Austintown and the children attended Austintown schools. (Tr. 138, 140). They subsequently moved to Niles and then to Cleveland. (Tr. 139). Appellee stated the children had a lot of friends in Austintown and knew the teachers and administrators. (Tr. 140). He moved from Canfield to Austintown so that his children could return to the Austintown school district where they were raised if they were to live with him. (Tr. 140-141). Appellee explained that if the children were in his custody they would be reunited with their old classmates. (Tr. 173-174). Additionally, appellee stated that Pearl Academy had no athletic activities for the children to participate in. (Tr. 148). Jacob had been looking forward to running track in Niles. (Tr. 148). And Melina has played softball for the last six years. (Tr. 149). When Melina lived in Austintown and Niles, appellee coached her softball team. (Tr. 149). Appellee stated that Melina is also interested in basketball and dance but appellant has not enrolled her in these activities. (Tr. 151). Appellee testified that he would do so if awarded custody. (Tr. 152). Additionally, Jacob had enjoyed playing the flute in the school band at Niles. (Tr. 156). But Pearl Academy does not have a band. (Tr. 156). Additionally, appellee testified that based on his research, schools run by the company that operates Pearl Academy are performing poorly and the company is being sued for its poor performance. (Tr. 215).

{¶23} Appellee also testified that he has worked at his job as a correctional sergeant for 20 years while appellant had only worked for three or four months since the divorce. (Tr. 158). He opined that having a job for 20 years set a positive example for his children while appellant's lack of working set a negative example. (Tr. 159-160).

{¶24} As to the move to Cleveland, appellee testified that it was about an hour-and-a-half commute to appellant's house on Cleveland's west side. (Tr. 162). This basically eliminated his two mid-week visitations with the children. (Tr. 163). He opined that appellant's move adversely impacted the children's ability to have a good relationship with him. (Tr. 164).

{¶25} Appellee also offered numerous photographs and testimony about the

activities he enjoys with the children such as birthday parties, nature walks, going to Craig's Beach, and coaching softball. (Tr. 166-182).

**{¶26}** And appellee discussed the children's relationship with each other, noting they both loved one another and had a positive effect on each other's life. (Tr. 183). Appellee believed the children should not be split up. (Tr. 183).

**{¶27}** Appellee next described his house and neighborhood. He stated that he lives in a three-bedroom house with a spacious yard in a quiet residential neighborhood with a lot of children nearby. (Tr. 196-197). He rents the house from his warden. (Tr. 272). In contrast, appellee testified that appellant's house was next to a bar and she had no backyard where the children could play. (Tr. 201-202; Def. Ex. 31). Additionally, appellee stated the children walk 12 to 13 blocks to Pearl Academy in a "not nice" area. (Tr. 208).

**{¶28}** Based on all of his testimony, appellee opined it was in the children's best interest that the court designate him the residential parent. (Tr. 216-217, 224). He also stated that Jacob has wanted to live with him since the time of the divorce. (Tr. 262-263).

**{¶29}** On cross-examination, appellee acknowledged that the children attend church with appellant and are involved with the church choir. (Tr. 249). He stated that he does not take them to church. (Tr. 250).

**{¶30}** Appellant was the next witness. She testified she moved to Cleveland because there were more employment opportunities and she had family support there. (Tr. 305). Appellant stated she grew up in Cleveland and her family is still there. (Tr. 310). Appellant testified that her mother and sister provide childcare for the children. (Tr. 312). And she stated she is in close contact with many other members of her extended family in Cleveland. (Tr. 313-314).

**{¶31}** Appellant opined that the children have a great relationship with appellee, even after moving to Cleveland. (Tr. 325). As to activities, appellant stated that Jacob was not interested in any activities except for the flute. (Tr. 330). And she said that she could not afford to enroll Melina in dance or basketball. (Tr. 333-334).

Appellant noted that the children have always attended church with her but not with appellee. (Tr. 335, 337). However, she admitted that the services are in Spanish and the children do not speak Spanish. (Tr. 490-491). She did state that the children's classes after service are in English. (Tr. 490).

**{¶32}** Appellant stated the children have adjusted well to the move to Cleveland. (Tr. 341). They have made friends, their behavior at school is good, and they are emotionally stable. (Tr. 341). They have also maintained relationships with their Austintown friends. (Tr. 341). And they have received good grades. (Tr. 423).

**{¶33}** Appellant testified that she recently obtained employment as a junior accountant. (Tr. 367, 369). She stated she drops the children off at school. (Tr. 463). When she cannot pick them up, her mother or sister picks them up and stays with them until she returns home from work. (Tr. 465, 467-468).

**{¶34}** Appellant acknowledged that Jacob wished to live with appellee. (Tr. 481). She stated that he began expressing this desire when he learned of her intent to move to Cleveland. (Tr. 481). She stated that he began acting out around her. (Tr. 482). But since the move, appellant stated she believed spending time with his cousins and extended family helped Jacob to adjust. (Tr. 483). Appellant also told the court that while Jacob wished to reside with appellee, Melina wished to stay with her. (Tr. 485).

**{¶35}** Appellant's mother, Carmen Espinosa, also testified. She stated that since appellant's move to Cleveland, she sees the children several times a week. (Tr. 514). Espinosa opined that the children are very loving toward appellant. (Tr. 517). She stated that the children reacted "just fine" to the move to Cleveland and were "coping." (Tr. 519). Espinosa explained that she cares for the children during the week when appellant is working. (Tr. 526-527). She opined it was in the children's best interest that they remain in appellant's custody. (Tr. 540). She also acknowledged that Jacob wished to live with appellee while Melina wished to stay with appellant. (Tr. 534, 542).

**{¶36}** Amanda Banner, the guardian ad litem, was the last to testify. Banner

testified that appellee had been very active in the children's lives, noting that he was involved with their school work, coached softball, and had additional visitation time beyond the standard order. (Tr. 556). Therefore, she did not believe appellant acted in the children's best interest when she moved them to Cleveland and removed them from appellee's involvement in their daily lives. (Tr. 556). She also noted that the children did not want to move to Cleveland; however, she stated they had adjusted well. (Tr. 577, 589). She noted that Jacob expressed his desire to live with appellee. (Tr. 556). And she stated Melina was emotional about her feelings in the case and did not want to upset either of her parents. (Tr. 556-557). Banner noted, however, that Melina expressed that she would be very sad if she lived away from her brother. (Tr. 557). Given these factors, Banner opined it was in the children's best interest to live with appellee in Austintown. (Tr. 557).

{¶37} The first factor the court was required to find in order to reallocate parental rights and responsibilities was that a change in circumstances has occurred since the prior custody order. The trial court made detailed findings on this issue that are supported by the evidence set out above.

{¶38} The trial court found numerous factors in this case to support a change in circumstances. It first found that the move to Cleveland was a change in circumstances because the travel time between appellee's house and the children's home in Cleveland was approximately one-and-a-half hours. The court noted the distance placed a serious burden on appellee's ability to remain involved in the children's lives. It noted that when the children lived nearby appellee had two mid-week visitations, attended school events, helped the children with their homework, and coached Melina's softball team. Since the children's move, the court found, appellee's mid-week parenting time has been negatively affected.

{¶39} The second contributing factor to the change in circumstances the court found was the instability of the children's home and education while with appellant. In support, the court noted that at the time of the divorce, the children were living in Austintown and attending Austintown schools. Shortly after the divorce, appellant

moved the children to Niles and enrolled them in Niles schools. A year and a half later, appellant moved the children to Cleveland and enrolled them in Pearl Academy. These moves constituted three cities/schools in less than three years. The court also had concerns about the level of education at Pearl Academy, noting that the school was in its first year of existence and the current principal came from another school owned by the same company that closed due to its failing performance. And it noted that the extracurricular activities the children were interested in were not available at Pearl Academy. In comparison, the court noted that Austintown schools are rated "excellent" and offer numerous activities for the children.

{¶40} The court found the third contributing factor to the change in circumstances was the children's wishes after two years of growth and maturity. It noted that prior to the relocation to Cleveland, the children were adamantly opposed to moving and wanted to remain in this area. It also noted that Jacob remains unhappy about the relocation and wants to live with appellee while Melina now wants to live with appellant, but would be quite sad living apart from her brother.

{¶41} As a fourth factor, the court found that appellant appeared to put her own wishes ahead of the best interest of the children, while appellee put the children's best interest first. It noted that appellant moved to Cleveland despite the effect on the children. It also noted that appellant was willing to split the children up so that she could have custody of Melina. In contrast, it noted that appellee moved from Canfield to Austintown so that the children could attend the same school district they attended during the marriage. And it pointed out that appellee wanted to keep the children out of these proceedings even knowing that an interview with Jacob strongly supported his own case for reallocation.

{¶42} Some courts have found that a parent's relocation alone is not sufficient to constitute a change of circumstances. See *In re D.M.*, 8th Dist. No. 87723, 2006-Ohio-6191; *Vincenzo v. Vincenzo*, 2 Ohio App.3d 307, 441 N.E.2d 307 (11th Dist.1982). Though it has also been found that while a parent's choice to relocate, on its own, does not warrant a finding of a change in circumstances, "a change in

circumstances may occur when the move is coupled with the impact of the move upon the child's welfare." *Forney v. Forney*, 12th Dist. No. CA2011-08-057, 2012-Ohio-3427, ¶20. And this court has found the fact that a mother moved three times into three different school districts in a two-year period contributed to a finding of a change in circumstances. *Schmidt v. Schmidt*, 7th Dist. No. 11 MO 6, 2012-Ohio-5252, ¶¶49-50.

{¶43} In this case, appellant moved twice in less than three years during which time the children were enrolled in three different school districts. This factor weighs in favor of a change in circumstances. Moreover, this factor must be considered along with the other factors supporting a change in circumstances. For instance, when appellant moved the children to Cleveland, she effectively eliminated appellee's weekday time with the children. His two weekday visits were no longer reasonable and he could not coach softball and participate in school activities as he had in the past. Additionally, the school appellant enrolled the children in had a questionable level of education and did not offer the extracurricular activities the children were interested in. Moreover, the evidence was that appellee has put the children's best interest first, while appellant may not have done so. When taken as a whole, these factors give the trial court a sound basis for finding a change in circumstances.

{¶44} The second factor the trial court was required to find in order to reallocate parental rights and responsibilities was that a change in custody was in the children's best interest.

{¶45} The court found the change in custody was in the children's best interests. It noted the magistrate analyzed each of the statutory best interest factors in great detail. The court found, after reviewing the transcript, the evidence supported a finding that it is in the children's best interests for appellee to be designated the residential parent.

{¶46} In considering the children's best interests, the court was required to analyze the statutory factors set out in R.C. 3109.04(F)(1), which include: the wishes

of the parents; the wishes and concerns of the child; the child's interaction and interrelationship with parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to home, school, and community; the mental and physical health of all persons involved; the parent more likely to honor and facilitate court-approved parenting time rights or visitation rights; whether either parent has failed to make all child support payments; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child or certain other offenses involving children or domestic violence; whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time; whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶47} The findings regarding these factors that appellant takes issue with are: she made the decision to take the children away from appellee; she appears to be placing her own best interest ahead of the children's best interest; and she is willing to split the children up in order to retain custody of Melina. She also asserts the court should have considered Melina's wishes to stay with her in Cleveland.

{¶48} Once again, the evidence supports the trial court's findings. Appellant testified that she decided to move to Cleveland for better job opportunities and to be near her family. The testimony indicated the children did not want to move to Cleveland. When the children lived in Austintown and Niles, appellee exercised visitation with them two schools nights a week and every other weekend, coached Melina's softball team, and was involved in their homework and schooling. But when appellant moved the children an hour and a half away from appellee, this type of contact between appellee and the children was not practical. Additionally, the court did consider Melina's wishes. But the evidence also demonstrated that the children share a closeness and do not want to be separated from each other. And the guardian ad litem recommended they remain together.

**{¶49}** The final factor the trial court was required to find in order to reallocate parental rights and responsibilities was that the benefits of the change in custody outweighed the harm caused by the change.

**{¶50}** Here the court found that the harm likely to be caused by the change in custody was outweighed by the advantages of the change. It cited to the magistrate's finding that the children, especially Jacob, have a strong relationship with appellee and that the restored relationship with their father and the stability he will provide the children is in their best interest.

**{¶51}** Appellant does not take issue with this finding. But we should note that the evidence supports this finding as it does the court's other findings. Appellee has worked at the same job for 20 years. He moved to Austintown so that if the court awarded him custody of the children, they would be able to attend the school district they had attended until appellant began moving them. On the contrary, appellant moved twice in two years resulting in the children attending three different schools in that short time. And she only recently gained employment. Additionally, the testimony was uncontroverted that the children already enjoy a strong relationship with appellee. Thus, the evidence supports the trial court's finding that the children would have more stability with appellee in Austintown.

**{¶52}** It is clear from the record that both parents love their children and would make more-than-capable residential parents. Given that our standard of review in this case is abuse of discretion, and because the trial court did not abuse its discretion in reallocating parental rights, we must affirm.

**{¶53}** Accordingly, appellant's assignment of error is without merit.

**{¶54}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.