[Cite as *Allison v. McCune*, 2016-Ohio-7936.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| REBECCA L. ALLISON, | ) | CASE NO. 15 MA 0208 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| HOWARD E. MCCUNE, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas Juvenile Court Division of Mahoning County, Ohio Case No. 2006 JI 500

JUDGMENT: Reverse and Remand.

APPEARANCES:

For Plaintiff-Appellant: Atty. John Ams
134 Westchester Drive
Youngstown, Ohio 44515

For Defendant-Appellee: Atty. Adam Hunt
8345 East Market Street
Warren, Ohio 44484
No Brief Filed

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: November 16, 2016

ROBB, J.

{¶1}   Appellant Rebecca Allison (the mother) appeals the decision of the Mahoning County Common Pleas Court, Juvenile Division, which reallocated parental rights and named Appellee Howard McCune (the father) as the residential parent.  The mother argues the juvenile court failed to make a finding of changed circumstances as required in order to change custody.  She also contends the court failed to find any harm likely to be caused by the change was outweighed by the advantages of the change.  Lastly, the mother posits she was prejudiced by inadmissible hearsay documents attached to the guardian ad litem's report.

{¶2}   The juvenile court did not expressly make all statutory findings for reallocation of parental rights.  Upon reviewing the entire decision, it is unclear whether the court applied the proper test.  Consequently, the juvenile court's judgment is reversed, and the case is remanded with instructions.  On remand, the court shall expressly apply the entire statutory test for reallocation of parental rights and make findings in support of each branch of the test.

### STATEMENT OF THE CASE

{¶3}   The parties' son was born in February 2006.  Soon thereafter, Mahoning County Child Support Enforcement Agency administratively determined parentage and set the father's child support at $50 per month.  (The father's income was $10,400, and the mother was receiving public assistance.)  The court adopted the determination.  In April 2007, the father filed a motion to establish parenting rights or companionship.  On June 29, 2007, the juvenile court adopted a magistrate's order naming the mother as residential parent.  The order said the parties reached an agreement on a visitation schedule, which included a transition to the court's standard local schedule.

{¶4}   The parties filed motions in 2008; they expressed concerns over each other's parenting.  The parties were ordered to undergo psychological evaluations, and a guardian ad litem was appointed.  On June 16, 2009, the juvenile court adopted a magistrate's decision saying the parties reached an agreement on parenting issues.  The mother was ordered to begin psychological counseling for the child.   Pending further review, the father was provided companionship on

Wednesdays and one night every other weekend. Within weeks, the magistrate issued an order resuming the standard schedule as recommended by the guardian ad litem. On September 16, 2009, the juvenile court adopted the magistrate's decision.

{¶5} On November 3, 2009, the court adopted a magistrate's decision granting the mother's 2008 motion to modify child support. The child support was increased to $202.09, retroactive to November 12, 2008. (The father's income was $13,000, and the mother's income was $7,592.)

{¶6} In November 2013, the father filed a motion to change custody seeking to be named the residential parent. He also filed a motion to show cause as the mother was denying his companionship rights. She responded with a motion to decrease the father's parenting time and a motion to show cause. The guardian ad litem was reappointed. In March 2014, the parties were ordered to exchange the child through Hope House and immediately schedule orientation there. A magistrate's order shows companionship did not commence as the mother failed to attend orientation, and she was again ordered to report to Hope House.

{¶7} In June 2014, the father filed a motion to show cause alleging the mother failed to bring the child to Hope House for the May 30 visitation and repeatedly misused the civil protection order process to defeat his companionship. The father filed certified copies of entries from the domestic relations and general divisions dismissing various petitions she filed against him. The mother was appointed counsel for the limited purpose of the contempt proceedings.

{¶8} On June 25, 2014, the magistrate held a contempt trial, found the mother in contempt, and sentenced her to thirty days in jail. She was permitted to purge the contempt by complying with the standard companionship order (with exchanges at McDonald's) amended to include reimbursement time in the form of an extra weekend each month and extra weeks the next summer. Examples of the mother's interference with companionship were outlined in the findings of fact within the magistrate's August 26, 2014 contempt decision, which was adopted by the juvenile court September 19, 2014.

**{¶9}** In September, the father filed a motion to show cause alleging the mother refused to permit him companionship time twice in August. On the father's pretrial request, the court ordered a psychological evaluation for the child.

**{¶10}** On November 5, 2014, the magistrate presided over the trial on the father's motion to reallocate parental rights. The mother was pro se. The magistrate's January 30, 2015 decision granted the father's motion, named him the residential parent, terminated the child support order, and gave the mother parenting time under the standard local schedule. The decision made findings and conclusions, outlining the best interest factors and explaining why each was relevant or not. The magistrate found the change of circumstances test was clearly met, a modification was in the best interest of the child, and the harm likely to be caused by the change in environment was outweighed by the benefits of the change.

**{¶11}** On February 12, 2015, the mother filed objections to the magistrate's decision. She raised issues with the factual findings, alleged the magistrate improperly weighed the best interest factors, and contested the ruling that the harm was outweighed by the benefits of the change. The transcript of the magistrate's hearing was submitted for the juvenile court's review, and the court held a hearing on the objections.

**{¶12}** On June 9, 2015, the juvenile court "granted" the mother's objections and set the matter for trial before the court with an in camera interview of the child. In the meantime, the mother filed a motion for ex parte relief asking for immediate custody due to bruises on the back of the child's legs suffered while under the father's supervision. The court denied the ex parte motion.

**{¶13}** On August 11, 2015, the juvenile court held a "trial *de novo.*" (Nov. 5, 2015 J.E.). The court conducted an in camera interview with the child, who was 9.5 years old. The court found the child did not have sufficient reasoning ability to express his wishes. He is considered a special needs child: the father testified the child is "mildly retarded" and has Pervasive Development Disorder, Not Otherwise Specified; the mother indicated the child has autism; the guardian ad litem testified the child is intellectually handicapped and has been diagnosed with Pervasive Developmental Disorders, Attention Deficit Hyperactivity Disorder. (Tr. 15-16, 78-79;

143, 154; Statement of Evidence). An attorney from CSEA testified the father's arrearage through January 1, 2015 was $3,359.45. (Tr. 10).

{¶14} The father testified that even after the original companionship orders, the mother would not let him visit with the child unless she was present. (Tr. 48). He pointed to contempt motions he eventually filed against her for not letting him see the child. (Tr. 18). He noted the various civil protection orders filed by the mother and dismissed by the courts. (Tr. 20). He said the mother failed to show up for exchanges at Hope House as ordered by the court. (Tr. 51, 70). He also said the child was supposed to attend counseling with Homes For Kids, but the mother was never home when they came to visit. (Tr. 74).

{¶15} The father took custody on February 2, 2015 (under the magistrate's decision). The father enrolled the child in counseling and followed the recommendations provided by the counselor. (Tr. 17, 77). He had the child evaluated by Dr. Stern and provided the psychological report to the guardian ad litem. (Tr. 77-78). He said the mother caused conflict at recent counseling sessions. (Tr. 17, 76). The father was dissatisfied with the child's education in Youngstown and wished to enroll him in a school in Howland or a special needs school in Trumbull County where the father lived. (Tr. 16).

{¶16} The father attended appointments with the child's three physicians after he took custody. (Tr. 56). He said the child has gastritis from nerves and stress, not lactose intolerance. (Tr. 57). The child was hospitalized with constipation and needed to drink more water. (Tr. 58-59). The father used time-outs in the child's room as punishment and did not spank the child. (Tr. 19). The father opined the mother was not capable of handling the child's special needs. (Tr. 25). He described the child's flight behavior during exchanges, where the child jumped from the mother's moving vehicle after she picked him up. (Tr. 18-19, 70-73).

{¶17} The father testified he never denied the mother visitation with the child. Regarding Easter Break, he explained the mother advised him she was sick. (Tr. 24-25, 41). The father has three other children; he also has eight grandchildren ranging in age from two to eleven. He said the child gets along "great" with these individuals. (Tr. 15). He brings the child to parks, rides bikes with him, and plays in the pool with

him. (Tr. 14). The child sleeps in his room, and the father sleeps on a pull-out couch. (Tr. 32).

{¶18} The father was questioned about allowing the child to drive a tractor. He noted the mother was present as they were dating again at that time; he pointed to her elbow in the photograph. (Tr. 27-29). When asked about the bruises on the back of the child's legs, the father explained how the child got stuck in a baby swing. (Tr. 34, 43, 64-67, 81). He said he only spoke to Children's Services about the mother after she called the agency about him. (Tr. 37-38).

{¶19} The father's employer and friend testified he was present at many exchanges. He was also present when the father arrived to pick up the child and the mother did not arrive or refused to let the child go. (Tr. 115). He witnessed the child refusing to go with the mother. (Tr. 83, 90). At these times, the child had a "fit" where he flailed, screamed, kicked, and ran. (Tr. 106). The child was hard to handle and had to be detained. (Tr. 106-107). During these episodes, this witness said the mother did nothing and screamed at the father to do something. (Tr. 107). He said the mother often drives by his shop and "gives me the middle finger." (Tr. 87, 89). Two weeks prior to trial, he saw her sitting across the street in a closed car wash. She has yelled at his customers. (Tr. 87). A few months earlier, she "barged" into the father's house and swung the door open so hard that it hit this witness in the head. (Tr. 88).

{¶20} The mother testified she denied the father companionship time because the child came back with injuries and she had no attorney to advise her how to address the issue. (Tr. 123). As examples, she cited the child burning his feet after a bonfire when he was two years old and the bruises on the back of his legs attributed to being stuck in a child's swing. (Tr. 124, 135). She complained about the tractor ride from two years ago; the father indicated it occurred longer in the past. (Tr. 124-125; 27-29, 49). She said she heard the child jumped off the back of a four-wheeler once; she saw a scrape on his leg thereafter. (Tr. 127-128). She complained the child should not be at the father's workplace due to chemicals and tools. (Tr. 133).

**{¶21}** The mother said she punished the child by sending him to his room but mostly tried to redirect him; she said she did not spank him. (Tr. 154). She testified she prepared the child for exchanges with the father since he does not do well with change. (Tr. 143-144, 155). When asked why she was disruptive at counseling, she replied the counselor did not take her side and would not let her see notes taken from the father's statements. (Tr. 153). She indicated she still wanted the child for her half of Easter break despite being sick and did not tell the father not to come. (Tr. 134, 156). She complained she was denied visitation on a certain date, but this was the father's birthday. (Tr. 156-157).

**{¶22}** The mother reported the father would not take the child's medications (for arthritis and acid reflux) with him when he took custody and refused a note she prepared for the father. (Tr.139). He told her he would follow through with the medications if needed; he had the prescriptions filled after visiting physicians with the child. (Tr. 141, 152). She brought the child to the pediatrician at least eight times in 2014. (Tr. 159). She has limited the child's time biking, walking, and swimming as she believed these activities made his legs hurt; she said he has juvenile rheumatoid arthritis. (Tr. 146-147). The mother reported the child had repeated scopes due to physical issues with his esophagus and stomach; she said he has acid reflux and celiac disease and does not digest various foods. (Tr. 130-132, 163). She was surprised the guardian ad litem had information that the child had no dietary restrictions (but was to drink more water) and did not have rheumatoid arthritis (but had arthralgia or aching of the joints). (Tr. 160).

**{¶23}** The mother explained that Homes For Kids involves a counselor coming to the house. She mentioned a counselor and a supervisor. (Tr. 164-165). The mother identified a letter she received from Homes For Kids. (Tr. 166). She said the child was receiving services but stopped when the counselor concluded his services were no longer needed. (Tr. 168). She denied receiving a different letter, Exhibit D. She admitted the guardian ad litem told her the counselor from Homes For Kids threatened to cancel her services and asked her to contact Homes For Kids. (Tr. 171-172). She said she contacted them. (Tr. 172).

**{¶24}** The guardian ad litem testified in accordance with his report and gave his opinion on the various best interest factors. (Tr. 178-183). He recommended the father be named the residential parent. (Tr. 178). He noted the child thinks like a five-year old and puts a "spin on things" depending on whom he is addressing. (Tr. 192).

**{¶25}** After trial, the court sent the matter to mediation, which occurred in September 2015 and was unsuccessful. On November 5, 2015, the juvenile court issued a judgment granting the father's motion to be named the residential parent. The court reviewed the testimony in its findings of fact. The court cited to the best interest test in R.C. 3109.04(B), listed the best interest factors, and made findings under each factor found to be relevant. The court then spoke of the benefits the child would experience by living with the father.

**{¶26}** As for the mother's companionship time, the court decreased the standard order, eliminating the mid-week visitation and eliminating one entire day from the alternate weekends. The court ordered the child must remain in counseling and placed restrictions on the mother with regards to the counseling center. The father's child support was terminated effective January 30, 2015.

**{¶27}** The mother filed a timely notice of appeal. The transcript of the trial to the court was filed. The juvenile court then signed an App.R. 9 statement of the evidence containing three sentences of the guardian ad litem's testimony missing from the end of the recorded hearing.

<u>ASSIGNMENT OF ERROR ONE & TWO: REALLOCATION</u>

**{¶28}** The mother sets forth three assignments of error; the first two are based upon the same underlying premise: the juvenile court applied the test for an initial allocation of parental rights rather than a reallocation of parental rights. The mother's first two assignments of error provide:

"THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING A CHANGE OF CUSTODY WITHOUT FINDING A CHANGE OF CIRCUMSTANCES."

"THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING A CHANGE OF CUSTODY WITHOUT FINDING THAT THE BENEFITS OF THE CHANGE OF CUSTODY OUTWEIGH THE HARM CAUSED BY THE CHANGE."

**{¶29}** In custody cases, the reviewing court must defer to the trial court's factual findings and cannot reverse the decision absent an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 421, 674 N.E.2d 1159 (1997) (the trial judge has "wide latitude" and "broad discretion" in considering the evidence). The fact-finder occupies the best position from which to view the witnesses and observe their demeanor, gestures, and voice inflections and to use these observations in weighing the testimony. *Id.* at 418. "This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Id.* at 418-419.

**{¶30}** The mother's brief mentions this general abuse of discretion standard of review but points out the trial court's discretion must be applied within the proper statutory guidelines. *See Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988) ("While a trial court's discretion in a custody modification proceeding is broad, it is not absolute, and must be guided by the language set forth in R.C. 3109.04."). The mother contends the juvenile court failed to apply the complete statutory test in R.C. 3109.04(E)(1)(a), stating the court's entry indicates the application of only the second part of the three-part reallocation test: (1) change in circumstances has occurred since the prior custody order; (2) the change in custody is in the child's best interests; and (3) the benefits of the change in custody outweigh the harm caused by the change. *See Amero v. Amero*, 7th Dist. No. 12 MA 142, 2013-Ohio-5636, ¶ 19, citing *Vella v. Vella*, 7th Dist. No. 10 JE 7, 2011-Ohio-1182, ¶ 23. The mother concludes the court applied the test for an initial custody determination.

**{¶31}** The juvenile court shall exercise its jurisdiction in child custody matters in accordance with R.C. 3109.04. R.C. 2151.23(F)(1). Pursuant to R.C. 3109.04(B)(1): "When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children."

**{¶32}** In determining the best interest of a child under this section, the court shall consider all relevant factors, including, but not limited to: (a) the parent's wishes; (b) the child's wishes and concerns, if applicable after an chambers

interview; (c) the child's interaction and interrelationship with parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to home, school, and community; (e) the mental and physical health of all involved; (f) the parent more likely to honor and facilitate parenting time rights; (g) any failure to make child support payments, including arrearages; (h) whether either parent or any member of the household of either parent previously has been convicted of certain offenses; (i) whether the residential parent continuously and willfully denied court-ordered parenting time; and (j) whether either parent has established a residence or is planning to establish a residence outside of this state. R.C. 3109.04(F)(1)(a)-(j).

{¶33} This analysis applies whether a trial court is faced with an initial allocation of parental rights or a modification of a prior allocation. R.C. 3109.04(B). When faced with a motion for reallocation of parental rights, additional steps must be taken in the court's analysis. R.C. 3109.04 (E)(1)(a) provides:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree,[1] and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

---

[1] To warrant a change in custody, the change in circumstances "must be a change of substance, not a slight or inconsequential change." *Davis*, 77 Ohio St.3d at 418, 420-421 (but, the statute does not require a "substantial" change).

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

As subdivisions (i) and (ii) are inapplicable here, the mother focuses on (iii) and states the court failed to indicate its consideration of this factor. In addition, she urges there is no indication the court determined there was a change in circumstances.[2]

{¶34} As the mother acknowledges, the court clearly applied the best interests test. The court listed the factors and made findings under each factor found relevant. The court did not specifically state there was a "change of circumstances"; nor did the court explicitly declare "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶35} The Ninth District has stated the trial court need not use the exact phrase "change of circumstances" before addressing best interests, ruling: "we will affirm a decision where the factual findings of the court support a finding of changed circumstances. Explicit language is preferable, but not necessary." *Nigro v. Nigro*, 9th Dist. No. 04CA008461, 2004-Ohio-6270, at ¶ 6. *See also Matis v. Matis*, 9th Dist. No. 04CA0025-M, 2005-Ohio-72, ¶ 7 (where the entry failed to expressly find a change of circumstances or the harm was outweighed by the benefit). However, the Ninth District subsequently ruled that if it is not "apparent" or "clear" the trial court considered the best interest factors, the matter must be remanded for the trial court

---

[2] This is in contrast to the magistrate's decision which: cited R.C. 3109.04(E)(1)(a); recognized the mother was designated residential parent in a 2007 judgment entry; pointed out the father had moved to change custody; expressly ruled that a change of circumstances occurred since the prior order (with examples of changes); and expressly found the harm likely to be caused by the change in environment is outweighed by the advantages of the change (after reviewing the best interest factors).

However, the juvenile court did not adopt the magistrate's decision. Rather, the court ordered a trial de novo and issued its own entry.

to make such a determination in the first instance. *In re M.T.*, 9th Dist. No. 11CA0026, 2012-Ohio-534, ¶ 7, 9.

**{¶36}** The Eleventh District addressed a case where the trial court found changed circumstances and best interests but failed to specifically refer to the harm outweighing the benefits of the change. The court found evidence the trial court addressed this factor even though it was not specifically mentioned. *Schneider v. Schneider*, 11th Dist. No. 2010-T-0012, 2011-Ohio-252, ¶ 47-49. More recently, where there was a finding of best interest but no specific finding of changed circumstances or one of three choices in (E)(1)(a)(i)-(iii), the Eleventh District found plain error and remanded. *Janecek v. Marschall*, 11th Dist. No. 2013-L-136, 2015-Ohio-941, ¶ 18 ("The trial court's failure to make the mandatory specific finding that a change of circumstances occurred in this case as well as its failure to indicate which condition was satisfied to trigger a re-designation of the child's residential parent is apparent from the record.").

**{¶37}** Where a trial court found changed circumstances, but did not mention best interests or harm versus benefit, this court has reversed due to a failure to make the three required findings for changing custody. *Adorante v. Wright*, 7th Dist. No. 98-BA-56 (Mar. 14, 2001). Even if magic words are not required, it is not the function of an appellate court to both review the record and make such a finding on behalf of a trial court. *See In re L.L.*, 3d Dist. No. 5-12-05, 2012-Ohio-4346, ¶ 36 (applying a different statute requiring a change of circumstances).

**{¶38}** As to the third element in the modification test, the juvenile court did not explicitly state, "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." Still, after setting forth the best interest factors and facts relating to each, the court made the following additional findings: the child has "benefitted" under the father's care; the father has provided stability and appropriate medical care; the child will "benefit" emotionally and physically under the father's care; the father has cooperated and embraced recommendations of physicians and the counselor; although the father does not fully embrace the child's limitations, he does recognize the limitations and the extraordinary effort required; the father does not have a separate room for the

child, but this did not persuade the court he should not be granted custody; and the father is able to meet the child's needs while the mother is unable to, despite her good intentions. *See* Nov. 5, 2015 J.E. at ¶ 1, under the heading, "ORDER". (As the court was reviewing some evidence since the magistrate's custody order, it was discussing ways the child has benefitted.) Even assuming these findings could be read as corresponding to the element asking whether any harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child, there is the matter of the threshold issue.

**{¶39}** The threshold issue for changing the court-ordered residential parent is changed circumstances since the prior order naming the mother as the residential parent. The juvenile court must make all necessary findings required by R.C. 3109.04 in order to modify custody. *See In re Poling*, 64 Ohio St.3d 211, 218, 594 N.E.2d 589 (1992). Where a trial court utilizes language that renders this court unable to ascertain whether the court was applying the proper statutory test in custody cases, this court is inclined to reverse and remand for specific application of the proper test. *See, e.g., Redmond v. Davis,* 7th Dist. No. 14 CO 37, 2015-Ohio-1198, ¶ 70-71, 76-77 (where we could not ascertain if the court applied best interests in the alternative to the inapplicable unsuitability test); *In re J.K.*, 7th Dist. No. 14 CA 899, 2014-Ohio-5502, ¶ 2, 30-32, 37 (where we could not ascertain whether the trial court knew the test was solely best interests; changed circumstances were not required where there was no actual and non-temporary court order as to the residential parent).

**{¶40}** Here, the juvenile court's entry does not sufficiently evince its application of the entire statutory test for a reallocation of the parental rights. Without holding any one issue is dispositive, we conclude that various aspects of the entry make it unclear the court applied the correct test.

**{¶41}** The court did not expressly find there were changed circumstances since the prior court order naming the mother the residential parent. In addition, the court noted the magistrate had named the father the residential parent without stating this was a change of the prior court-order naming the mother residential parent. Certain findings indicate the court realized the child previously lived with the mother

and the father exercised visitation. However, there is no mention the current case involved a reallocation or modification of court-ordered parental rights.

{¶42} Furthermore, although the court cited R.C. 3109.04 in general and applied the best interest factors from division (F), the court specified only "3109.04(B) sets forth the best interest standard." Division (B) applies to both original custody decrees and modifications, but it solely refers to the best interest test. As reviewed supra, there are additional elements applicable to a modification. The court did not cite division (E), which contains the remainder of the test for custody modifications.

{¶43} A comparison of the court's analysis on the best interest factors in R.C. 3109.04(F)(1)(f) and (i) reinforces the mother's concern that the court was proceeding as if this was an initial court order assigning residential parent status. The juvenile court discussed the best interest factor in R.C. 3109.04(F)(1)(f), which asks the court to determine "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights[.]" This factor is about the future; although, the past can be relevant. The court noted the mother has not honored or facilitated the father's visitation or parenting time and has done the child a grave disservice. The court found the mother's interference malicious and said the mother's testimony was not credible.

{¶44} Yet, the court then found the factor in R.C. 3109.04(F)(1)(i) did "not apply to this case." This best interest factor asks the court to determine: "Whether the *residential parent* or one of the parents subject to a shared parenting decree has *continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court*[.]" Considering the findings made under factor (F)(1)(f), the subsequent finding that (F)(1)(i) was inapplicable tends to show the court did not recognize the denial of parenting time was by a "residential parent" or that the (interfered with) parenting time was "in accordance with an order of the court."

{¶45} The significance of this issue is magnified when combined with the other issues, including the failure to mention changed circumstances; to cite the applicable division; to reference reallocation/modification; or to acknowledge the prior custody decree. Particular issues, on their own, may not create obscurity in a given

case. Yet, the combined omissions in the entry on review in this case produce a lack of clarity as a whole. These omissions contrast with the court's citation to R.C. 3109.04(B) and the "best interest standard" along with the court's quotation of each best interest factor with findings under each factor, i.e. the latter process highlights the former omissions.

{¶46} As it is unclear whether the complete test for reallocation of the parental rights was applied, we are compelled to reverse and remand. We instruct the court to make express statutory findings with reasoning as to each prong of the reallocation test on remand. Even if specific factual pronouncements and supporting reasoning were not mandated in the first instance, where we cannot ascertain the proper test was utilized, this court finds it proper to ask for more specifics on remand. *See, e.g., Redmond,* 7th Dist. No. 14 CO 37 at ¶ 71, 77, citing *In re J.K.*, 7th Dist. No. 14CA899 at ¶ 2, 32, 37, citing *In re Bell*, 7th Dist. No. 04 NO 321, 2005-Ohio-6603, ¶ 52–56.

<u>ASSIGNMENT OF ERROR THREE: HEARSAY</u>

{¶47} The mother's third assignment of error provides:

"THE TRIAL COURT ERRED IN CONSIDERING INADMISSIBLE HEARSAY DOCUMENTS ATTACHED TO THE GUARDIAN AD LITEM'S REPORT."

{¶48} The mother believes the juvenile court relied on inadmissible hearsay documents in conducting its best interest analysis. First, she contests the admission of Exhibits C and D.

{¶49} As aforementioned, the mother was previously ordered to ensure psychological counseling for the child. At the August 2015 hearing before the trial court, the father testified he took custody (under the magistrate's decision) on February 2, 2015. He testified the child was supposed to be receiving counseling services from Homes For Kids. (Tr. 74). When he called Home for Kids, he learned the child was no longer receiving services because the mother and child were not home when the counselor came to the home for counseling sessions. (Tr. 74-75). The father was not able to reinstate counseling with Homes For Kids; he had to make arrangements for counseling with another provider. (Tr. 75). The father said the child needed weekly counseling, which he began in March, but was only going every two weeks due to a disruption caused by the mother at a recent session. (Tr. 76-77).

**{¶50}** The mother testified she would not do anything to hinder the child's current counseling. (Tr. 150-151). After the father's attorney questioned the mother, the guardian ad litem questioned her as well. The mother explained that Homes For Kids involves a counselor who interacts with the child at the child's home. (Tr. 164). She said the child had a male counselor and a female supervisor was present as well. (Tr. 164-165). She could not remember the counselor's name. The guardian ad litem handed the mother a letter, marked Exhibit C, and asked if she has seen the letter. (Tr. 165). Her attorney objected, and the court held its ruling in abeyance. (Tr. 165).

**{¶51}** The mother said she had received the letter, which was addressed to her. (Tr. 165-166). She was asked if the man who signed the letter was the child's counselor. The mother could not remember if the person who signed the letter was the counselor. (Tr. 167). Exhibit C was an August 11, 2014 letter from a counselor at Homes For Kids saying he tried to contact her several times to set up an appointment but his phone calls had not been returned. The letter advised that if she failed to schedule and attend an appointment within seven days, it would be assumed she was no longer interested in the services.

**{¶52}** When she was asked why the child stopped receiving services from Homes For Kids, the mother testified the counselor decided his services were no longer needed and "signed off" on counseling. (Tr. 168). She was then presented with Exhibit D and asked if she had seen this letter. (Tr. 169). The court advised her not to read it out loud as the court might not have to hear it. This exhibit was a May 1, 2014 letter addressed to her from the guardian ad litem, stating he learned she was not available for the most recent scheduled home visit. The letter explained the child's services may be discontinued as a result of missed appointments and asked her to contact the Homes For Kids to reschedule.

**{¶53}** The mother said she never saw the letter before. (Tr. 169). The guardian ad litem then asked if he ever spoke to her about counseling services with Homes For Kids. (Tr. 169-171). She agreed he addressed the issue with her at least three times, including once at Hope House (the exchange site for a time). (Tr. 171). She acknowledged the guardian ad litem advised her Homes For Kids threatened to

cancel her services and told her to contact Homes For Kids. (Tr. 171). She said she did contact Homes For Kids and denied they terminated her services. (Tr. 172).

**{¶54}** The guardian ad litem moved to admit his exhibits. (Tr. 173). He noted he previously attached the letters to a guardian ad litem report. The mother's attorney objected, voicing that hearsay documents cannot be admitted into the record simply by attaching them to a guardian ad litem's report; he noted the guardian ad litem could testify about his investigation and have his testimony tested by the Rules of Evidence. (Tr. 174). The court reserved a ruling on the letters. (Tr. 175).

**{¶55}** After a recess, the court advised that it checked the rules and concluded the exhibits were admissible because they were attached as part of the guardian ad litem's report. The mother's attorney asked, "all documents attached to the GAL reports as a general rule?" The court responded, "So long as they're attached and the parties have them, then you have the opportunity to look at the report." (Tr. 176).

**{¶56}** The guardian ad litem then testified. He recommended the father receive custody. He testified the child's counseling with Homes For Kids was terminated as a result of the mother's failure to keep scheduled appointments and adequately cooperate with Homes For Kids. (Tr. 182). During his recitation of facts he believed supported various best interest factors, the mother's attorney stipulated the court could take judicial notice of the guardian ad litem's report without full testimony reiterating the contents of the report. (Tr. 183).

**{¶57}** As the mother's brief points out, the trial court's judgment entry says the exhibits presented by the guardian ad litem were "admitted without objection" when, in fact, her attorney did object to the admission of the two letters as detailed above.

**{¶58}** As for Exhibit C, this was the letter from Homes For Kids advising the mother the child's services would be discontinued due to her failure to return calls to schedule an appointment (if she did not attend an appointment within 7 days). It appeared the original intent of showing the letter to the mother was to trigger a memory as to the name of the child's counselor. The mother admitted she received this letter.

**{¶59}** The mother urges the court ignored the evidentiary bar on hearsay by expressly admitting this letter into evidence over her objection in the absence of testimony by a Homes For Kids representative. The mother relies on the Second District's *Pyburn* case in support. In that case, the guardian ad litem attached various documents to his report, including some from a Kansas investigation involving the child. The drafters of the documents did not testify at trial. The trial court found the attachments to the guardian ad litem's report were exceptions to the hearsay rule and relied on the exhibits in the entry naming a residential parent. *Pyburn v. Woodruff*, 2d Dist. No. 2008 CA 17, 2008-Ohio-6731, ¶ 9.

**{¶60}** The Second District held: "Insofar as these exhibits were offered for the truth of the matter asserted, we disagree with the trial court's conclusion that they did not constitute hearsay." *Id.* at ¶ 10. The court disposed of an argument that the hearsay exception for obtaining medical treatment applied to a social worker's statement: even assuming this exception would have allowed the social worker to set forth the child's statement, the social worker's statement about the child's statement was hearsay as the social worker did not testify. *Id.* at ¶ 11-12. The *Pyburn* court reversed and remanded to the trial court, concluding: "Although the admissible evidence might have supported the trial court's conclusion, it is clear from the trial court's judgment that the court placed considerable reliance on the inadmissible documents, and we cannot say its error was harmless." *Id.* at ¶ 13.

**{¶61}** Here, the trial court said it checked the rules and confirmed that any attachments to a guardian ad litem's report are admissible. We note that different rules apply depending on the proceeding before the juvenile court. For instance, where a dispositional hearing is being held after an adjudicatory hearing, "the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." Juv.R. 34(B)(2), (I) (except Rules of Evidence apply in hearing on a motion for permanent custody). *See also* R.C. 2151.35(B)(2)(b) (for a similar statement).

**{¶62}** The Rules of Evidence do not apply in proceedings where other rules prescribed by the Supreme Court govern matters relevant to evidence. Evid.R. 101(C)(6). However, a hearing on a motion to reallocate parental rights occurring

before the juvenile court (because the parties were not married, for instance) is not a dispositional hearing held after an adjudicatory hearing. In accordance, the Juvenile Rule permitting hearsay at the dispositional hearing has no application here.

**{¶63}** The issue concerns attachments to a guardian ad litem report in a custody case between parents. Pursuant to Juv.R. 32(D), "on the filing of a motion for change in the allocation of parental rights and responsibilities for the care of children, the court may cause an investigation to be made as to the character, health, family relations, past conduct, present living conditions, earning ability, and financial worth of the parties to the action." Furthermore, Sup.R. 48 applies "in all domestic relations and juvenile cases in the courts of common pleas where a court appoints a guardian ad litem to protect and act in the best interest of a child." Sup.R. 48(A).

**{¶64}** "In order to provide the court with relevant information and an informed recommendation regarding the child's best interest, a guardian ad litem shall perform, at a minimum, the responsibilities stated in this division, unless impracticable or inadvisable to do so." Sup.R. 48(D). Division (D)(13) of Sup.R. 48 further provides:

> A guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties. In order to provide the court with relevant information and an informed recommendation as to the child's best interest, a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable * * *
>
> (d) Meet with and interview the parties, foster parents and other significant individuals who may have relevant knowledge regarding the issues of the case; * * *
>
> (f) Review criminal, civil, educational and administrative records pertaining to the child and, if appropriate, to the child's family or to other parties in the case;
>
> (g) Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records;
>
> (h) Recommend that the court order psychological evaluations, mental health and/or substance abuse assessments, or other evaluations or

tests of the parties as the guardian ad litem deems necessary or helpful to the court; and

(i) Perform any other investigation necessary to make an informed recommendation regarding the best interest of the child.

**{¶65}** Thereafter, the guardian ad litem shall prepare a written final report, including recommendations to the court. Sup.R. 48(F). "The report shall detail the activities performed, hearings attended, persons interviewed, documents reviewed, experts consulted and all other relevant information considered by the guardian ad litem in reaching the guardian ad litem's recommendations and in accomplishing the duties required by statute, by court rule, and in the court's Order of Appointment." *Id.* "The court shall consider the recommendation of the guardian ad litem in determining the best interest of the child only when the report or a portion of the report has been admitted as an exhibit." Sup.R. 48(F)(2) (these "provisions shall apply to guardian ad litem reports in the juvenile and domestic relations").

**{¶66}** "Given the guardian's role and the requirements that she explain her investigation and the basis for her recommendation, her report and testimony may necessarily include information about what other people told her." *DiDonato v. DiDonato*, 5th Dist. No. 2015 AP 07 0042, 2016-Ohio-1511, ¶ 79, quoting *Sypherd v. Sypherd*, 9th Dist. No. 25815, 2012-Ohio-2615. These courts have distinguished between whether a statement was offered to prove the truth of the matter asserted and whether a statement was offered simply to show the statement was made. *DiDonato*, 5th Dist. No. 2015 AP 07 0042 at ¶ 79; *Sypherd*, 9th Dist. No. 25815 at ¶ 13. The guardian ad litem can refer to out-of-court statements to explain the investigation or the basis for her ultimate conclusion on best interests. *Sypherd*, 9th Dist. No. 25815 at ¶ 13. *See also In re S.D.*, 8th Dist. No. 97322, 2012-Ohio-2299, ¶ 51, 53.

**{¶67}** Although the guardian ad litem is to conduct interviews, collect records, detail these efforts in a report to be submitted to the court, and arrive at conclusions to be explained at trial if requested, reviewing courts maintain that the trial court cannot use the guardian ad litem's evidence of "facts" about which he has no first-hand knowledge. *See, e.g., Sypherd*, 9th Dist. No. 25815 at ¶ 13-14; *Guliano v.*

*Guliano*, 11th Dist. No. 2010-T-0031, 2011-Ohio-6853, ¶ 20 (guardian ad litem's recital of contents of other's letter was inadmissible hearsay). *See also In re Sypher*, 7th Dist. No. 01BA36 (Mar. 11, 2002) (reversing judgment in a permanent custody case because trial court relied on hearsay included in guardian ad litem's report). Yet, the admission of hearsay is not prejudicial unless it is shown that such evidence was relied on by the judge; the mere mention of it by the judge does not show reliance. *See Adorante v. Wright*, 7th Dist. No. 98-BA-56 (Mar. 14, 2001).

{¶68} Here, the mother urges the admission of the letter from Homes For Kids prejudiced her and could not be considered harmless error because the juvenile court utilized it for the truth of whether she failed to keep and schedule appointments. We note the letter stated services *would be* discontinued if she did not respond within the week. In addition, it is important to recognize that, in testifying to his attempt to reinstitute counseling services, the father testified counseling was cancelled due to the mother's failure to be home for scheduled visits.

{¶69} The father's testimony on this subject was presented early in the trial without any objection. The mother responded by testifying that counseling services were stopped because the counselor believed they were no longer necessary. The juvenile court was permitted to decide the issue by judging the credibility of the parties' claims. The juvenile court's statement can be attributed to the father's testimony. The exhibit was merely cumulative of his testimony. Its admission did not constitute reversible error.

{¶70} Next, the mother contests the admission of Exhibit D; she includes this exhibit in her argument regarding Exhibit C. Her contention is premised on the belief this exhibit was another letter from Homes For Kids. Yet, it does not appear this was the case. It appears the guardian ad litem was showing the mother a letter he sent to her about Homes For Kids. This could have been admitted as a business record of the guardian ad litem, even if not to prove the truth of her missing an appointment, to prove he notified the mother she needed to contact the counselor.

{¶71} Authentication would have involved the guardian ad litem's testimony, not the testimony of a representative of Homes For Kids. Although the guardian ad litem had not yet testified at the point the court admitted the letter, he could have

authenticated his own letter during his testimony. When the guardian ad litem began testifying, the mother's attorney specifically asked that he not read his entire opinion and findings into the record, stipulating to the court considering his report. As counsel had already acknowledged in his earlier objection (to admitting a letter merely based on its attachment to a report), certain evidence could be admissible during the guardian ad litem's testimony.

{¶72} In any event, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *." Evid.R. 103(A). The mother previously admitted in her testimony that the guardian ad litem spoke to her, at least three times, about counseling through Homes For Kids. She acknowledged they spoke about the threat to cancel services and her need to contact them. As such, the later admission of the letter from the guardian ad litem to the mother was not prejudicial to the mother's substantial rights.

{¶73} Finally, the mother's brief contends the report of Dr. Stern was inadmissible in the absence of his testimony. The father brought the child to Dr. Stern for a psychological evaluation the month before the hearing to assist in developing a treatment plan. (The court-ordered psychological evaluation had already been conducted by a different psychologist.) Dr. Stern's report was attached to the guardian ad litem's report. Beside descriptions of the child's performance, the report contains recommendations in the form of strategies for reducing frustration by the child, without reference to any behavior of these parents.

{¶74} The mother did not specifically object to the evaluation. The trial court did not mention the evaluation. The mother does not indicate to this court what prejudice was suffered by the attachment of this evaluation to the guardian ad litem's report. In fact, the mother's attorney read from Dr. Stern's psychological evaluation while cross-examining the guardian ad litem in order to make the point that the mother's method of transitioning the child for exchanges was closely aligned to the recommendations of Dr. Stern. (Tr. 188-191). This argument is overruled.

{¶75} For all of the foregoing reasons, the trial court's judgment is reversed, and this case is remanded with instructions. On remand, the court shall expressly

apply the entire statutory test for reallocation of parental rights and make findings in support of each branch of the test.


Waite, J., concurs.

DeGenaro, J., concurs.